The KANSAS BANKERS SURETY COMPANY, a Kansas insurance corporation authorized to do business in South Dakota, Appellee,

v.

Jack LYNASS, Appellant.

No. 89–5574.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1990.

Decided Dec. 5, 1990.

William G. Porter, Rapid City, S.D., for appellant.

Stephen P. Weir, Topeka, Kan., for appellee.

Before JOHN R. GIBSON, Circuit Judge, ROSS, Senior Circuit Judge, and LARSON,* Senior District Judge.

ROSS, Senior Circuit Judge.

This is a declaratory judgment action brought by an insurer, Kansas Bankers Surety Company (Kansas Bankers), to determine whether it had the right to conduct the defense of its insured, Jack Lynass, in a state court action. Lynass counterclaimed, alleging bad faith and intentional infliction of emotional distress. The district court granted summary judgment in favor of Kansas Bankers on its declaratory judgment action and against Lynass on his counterclaims. We reverse the bad faith issue and remand to the district court for further proceedings.

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The *Garrett* suit was dismissed on Lynass' and BankWest's motion for summary judgment; the

## FACTS

On July 22, 1987, Kansas Bankers issued an insurance policy to BankWest, Incorporated, of Pierre, South Dakota (BankWest). The insurance policy was a directors' and officers' legal defense and limited liability policy; Jack Lynass, a BankWest officer, was covered by the policy. On December 31, 1987, Lynass contacted Kansas Bankers by letter and notified it that he, BankWest, and the other board members had been sued by one of BankWest's customers, Glen Garrett. Kansas Bankers immediately appointed the Topeka law firm of Sloan, Listrom (Sloan) to represent Lynass in the *Garrett* suit.[1]

Two attorneys with the Sloan firm allegedly learned that at least one of BankWest's directors knew of the anticipated Garrett claim prior to the date that Kansas Bankers had issued the insurance policy. The Sloan attorneys revealed this information to Donald Towle, the president of Kansas Bankers. On October 17, 1988, Towle informed Lynass that if the information were true, there would be no coverage for Lynass in the event of an unfavorable judgment in the *Garrett* lawsuit. Towle pointed to a particular clause in the insurance policy which excluded from coverage all claims which were known to any of the directors or officers at the time the policy was issued. Towle's letter of October 17 further stated that even though Kansas Bankers had withdrawn coverage for claims arising out of the *Garrett* litigation, Kansas Bankers would continue to provide Lynass with a defense, because it was "the fair thing to do."

On October 31, 1988, William Porter, an attorney for BankWest, responded to Towle's denial of coverage on behalf of Lynass. Porter informed Kansas Bankers that (1) Lynass did not accept its reasons for denying coverage; (2) Kansas Bankers' attempt to furnish counsel for Lynass was unacceptable; and (3) any attorney selected by Kansas Bankers for the representation

South Dakota Supreme Court has recently affirmed this dismissal. *Garrett v. BankWest, Inc.,* 459 N.W.2d 833 (S.D.1990).

of Lynass had a conflict of interest. In addition, Porter stated that Lynass would look to Kansas Bankers for full indemnity including attorneys' fees and costs.

Following this letter from Porter, there was considerable correspondence between the parties, dealing mostly with Lynass' rejection of the reservation of rights, his rejection of Kansas Bankers' proffered defense and Kansas Bankers' insistence that the Sloan firm be allowed to control Lynass' defense. Kansas Bankers then retained an attorney, Stephen Weir, to independently analyze the coverage issue. On December 16, 1988, Weir notified Porter that Kansas Bankers had elected to "provide a full and complete defense, *without* a reservation of rights as to the coverage question." After this withdrawal of the reservation of rights, Kansas Bankers' believed that there was no longer any possibility of a conflict of interest and insisted that the Sloan firm continue to control the defense of Lynass. However, on December 21, 1988, Lynass rejected Kansas Bankers' election to withdraw the reservation of rights and rejected its offer to continue his defense.

Kansas Bankers then commenced this declaratory judgment action, requesting the court to determine the rights of the parties under the insurance policy and to enforce the terms of the policy, thereby allowing Kansas Bankers to conduct the defense of Lynass. Lynass counterclaimed, raising allegations of bad faith and intentional infliction of emotional distress. The district court granted Kansas Bankers' motion for summary judgment, finding in favor of Kansas Bankers on the declaratory judgment action and against Lynass on his counterclaims. We reverse on the bad faith issue and remand to the district court for further proceedings.

ANALYSIS

Lynass' bad faith claim is two-pronged. First, Lynass claims that Kansas Bankers wrongfully withdrew coverage for Lynass in the *Garrett* lawsuit.[2] Secondly, Lynass claims that Kansas Bankers acted in bad faith when it refused to allow him to control his own defense after it issued the reservation of rights. We need only address the second issue to find bad faith on the part of Kansas Bankers.

A duty to act in good faith is part of every insurance contract. *Helmbolt v. Le-Mars Mut. Ins. Co.*, 404 N.W.2d 55, 57 (S.D.1987). In analyzing a bad faith claim, the South Dakota Supreme Court stated:

> While no single satisfactory test has been formulated as to what constitutes good or bad faith courts uniformly hold that the insured's interests must be considered. It appears to have been most frequently held [that] the insured's interests must be given 'equal consideration' with those of the insurer....

*Kunkel v. United Sec. Ins. Co. of New Jersey*, 84 S.D. 116, 122, 168 N.W.2d 723, 726 (1969). In the instant case, we find no such "equal consideration," as Kansas Bankers put its own interests before the interests of its insured, Lynass.

Once Kansas Bankers issued the reservation of rights, it could not then insist on conducting the defense of Lynass without his consent. Established principles of South Dakota law firmly support this position. In *Connolly v. Standard Casualty Co.*, 76 S.D. 95, 101, 73 N.W.2d 119, 122 (1955), the South Dakota Supreme Court held that "defendant insurer did not have the right without consent of insured to retain control of the defense and at the same time reserve [the] right to disclaim liability." Similarly, 14 R. Anderson, *Couch on Insurance* § 51:92 (2d ed. 1982), states: "Where the insurer tried to reserve the coverage issues it had no right to control the defense...."

The record here very clearly indicates that Lynass did not consent to Kansas Bankers' defense under the reservation of rights. On numerous occasions Lynass, by his own correspondence and through Porter, demanded the recusal of the Sloan

---

**2.** Because full liability coverage for Lynass was reinstated by Kansas Bankers on December 16, 1988, and because the South Dakota Supreme Court has finalized the dismissal of the *Garrett* lawsuit, this issue is moot.

firm from his defense. However, Kansas Bankers took the position that Lynass did not reject the defense offered by Kansas Bankers until December 15, 1988, when Lynass *personally* wrote to the Sloan firm and demanded that it withdraw from his defense and that he be able to conduct his defense with his own selected counsel, Porter. Therefore, Kansas Bankers argues, it could reasonably assume that Lynass had consented to its continued defense up until December 15, 1988.

This argument has no merit. It is axiomatic that "notice given by an attorney is the act of the client." *City of Des Moines v. Civil Serv. Comm'n,* 334 N.W.2d 133, 135 (Iowa 1983). Here, in a letter dated October 31, 1988, Porter wrote to Kansas Bankers, "on Mr. Lynass' behalf," and expressly refused the defense offered by Kansas Bankers. A review of the record reveals several such letters from Porter, written throughout November and December. Surely Kansas Bankers could not reasonably believe that Lynass consented to its continued defense.

■ Kansas Bankers further asserts that it only "temporarily" withdrew "partial" coverage. This language is misleading, as Kansas Bankers did in fact deny total liability coverage in the event of an unfavorable judgment. This partial remaining coverage of which Kansas Bankers speaks, refers solely to the providing of a defense for Lynass. It is clear how a conflict of interest can develop in a situation like this. Kansas Bankers could conceivably offer only a token defense if it knows that it can later assert non-coverage. If an insurer does not think that the loss on which it is defending will be covered under the policy, the insurer may not be motivated to achieve the best possible settlement or result. *See Continental Ins. Co. v. Bayless & Roberts, Inc.,* 608 P.2d 281, 289 (Alaska 1980). Furthermore, the insurer may be tempted to devote more effort into the non-coverage issue than into defending its insured. We find no merit in Kansas Bankers' "partial coverage" explanation.

■ In addition to bad faith, Lynass also claims that Kansas Bankers caused him to suffer severe emotional distress. Specifically, Lynass contends that Kansas Bankers left him "naked in the face of an enormous, multi-million dollar claim" and that Kansas Bankers should have realized that such action would cause Lynass to suffer "anxiety, uncertainty, inability to sleep, and humiliation." However, Lynass failed to set forth any medical bills or records to substantiate this claim. Therefore, we agree with the district court that based on the paucity of evidence, no reasonable jury could find that Kansas Bankers caused Lynass to suffer severe emotional distress. The district court's handling of this issue is therefore affirmed.

CONCLUSION

We find bad faith on the part of Kansas Bankers during the time period it attempted to retain control of Lynass' defense while at the same time reserving the right to disclaim liability on the coverage issue. We therefore reverse the entry of summary judgment and remand to the district court for further proceedings consistent with the views expressed in this opinion. We affirm the district court's treatment of Lynass' claim for emotional distress.